UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDRIA BAUGH<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:17-cv-01382 AC<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Child's Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 402(d), and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]

////

---

[1] Disabled child's insurance benefits are paid to the qualified "child…of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual," if the child is 18 years of age, or older, and has a disability that began before she turned 22 years old. 42 U.S.C. § 402(d)(1)(B)(ii); 20 C.F.R. § 404.350(a)(5); Moore v. Comm'r of Social Sec. Admin., 278 F.3d 920, 925 (9th Cir. 2002). SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels…").

For the reasons that follow, the court will grant plaintiff's motion for summary judgment, and deny the Commissioner's cross-motion for summary judgment.

## I. PROCEDURAL BACKGROUND

Plaintiff applied for child's insurance benefits on March 6, 2014, and for supplemental security income on September 16, 2014. Administrative Record ("AR") 165-166, 167-172.[2] The disability onset date for both applications was alleged to be September 1, 2008. Id. The applications were disapproved initially and on reconsideration. AR 113-117, 120-129. On March 30, 2016, ALJ Jean R. Kerins presided over the hearing on plaintiff's challenge to the disapprovals. AR 41-59 (hearing transcript). Plaintiff was present and testified at the hearing. AR 43. Plaintiff was represented by attorney Nancy McCombs at the hearing. Id. Vocational Expert ("VE") Susan Creighton-Clavel was also present and testified at the hearing. Id.

On July 11, 2016, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Section 223(d) of Title II of the Act, 42 U.S.C. § 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 21-34 (decision), 35-40 (exhibit list). On June 14, 2017, after receiving counsel's Representative Brief as an additional exhibit, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-3 (decision), 4 (exhibit list).

Plaintiff filed this action on July 6, 2017. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 4, 6. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 10 (plaintiff's summary judgment motion), 15 (Commissioner's summary judgment motion).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1993, and accordingly was 14 years old on the alleged disability onset date, making her a "younger person" under the regulations. AR 33; see 20 C.F.R §§ 404.1563(c), 416.963(c) (same). Plaintiff has a high school education, and can communicate in English. AR 33.

---

[2] The AR is electronically filed at ECF Nos. 8-3 to 8-17 (AR 1 to AR 764).

III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive….'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

////

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Child's Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment….'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

4

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. Born [in 1993], the claimant had not attained age 22 as of September 1, 2008, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since September 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)
>
> 3. [Step 2] The claimant has the following severe impairments: Postural Orthostatic Tachycardia Syndrome (hereinafter "POTS"); asthma; chronic lumbar pain; and headaches (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional climbing of ramps, stairs, ladders, ropes and scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; avoid concentrated exposure to extreme cold or heat, fumes, odors, dust, gases, and poor ventilation; and avoid even moderate exposure to hazards.
>
> 6. [Step 4] The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

| | |
|---|---|
| 1 | 7. [Step 5] The claimant was born [in 1993] and was 14 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963). |
| 2 | |
| 3 | 8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964). |
| 4 | |
| 5 | 9. [Step 5, continued] Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968). |
| 6 | |
| 7 | 10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)). |
| 8 | |
| 9 | |
| 10 | 11. The claimant has not been under a disability, as defined in the Social Security Act, from September 15, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). |
| 11 | |

AR 23-34.

As noted, the ALJ concluded that plaintiff was "not disabled" under Section 223(d) of Title II of the Act, 42 U.S.C. § 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 34.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred in (1) evaluating the medical opinion of plaintiff's treating cardiologist, and (2) improperly discrediting plaintiff's testimony. ECF No. 10 at 16-24. Plaintiff requests that the matter be remanded for an immediate award of benefits, or in the alternative, remanded for further development of the record. Id. at 24-25. The Commissioner, in turn, argues that the ALJ's findings are supported by substantial evidence and free from reversible error. ECF No. 15 at 31. Because the court finds that reversal and remand for an immediate award of benefits is appropriate on the ground that the ALJ erroneously evaluated the opinion of plaintiff's treating physician, only this argument is addressed here.

A. The Medical Evidence Before the ALJ

The Ninth Circuit distinguishes "among the opinions of three types of physicians: (1) those who treat the claimant (treating physician); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

(nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996). Accordingly, "the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014) (citing Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)). If a treating physician's opinion is not contradicted by another doctor, it may only be rejected for clear and convincing reasons supported by substantial evidence. Orn, 495 F.3d at 632 (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Even if the treating physician's opinion is contradicted by another doctor, it may not be rejected unless the ALJ provides specific and legitimate reasons supported by substantial evidence. Id. (quoting Reddick, 157 F.3d at 725). In general, "conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) (citation omitted).

In this case, the ALJ considered the opinions of four health professionals, including plaintiff's treating physician. The opinions of non-examining physician, C. Eskander M.D., was given "little weight." AR 31-32. The opinion of examining physician, Steven E. Gerson D.O., was given "partial weight." AR 29. The opinion of non-examining physician, J. Zheutlin M.D., was given "great weight." AR 31. D r. Zheutlin opined, in relevant part, that plaintiff was able to "sit," "stand and/or walk (with normal breaks) for a total of" "about 6 hours in an 8-hour workday[,]" "occasionally [] lift and/or carry" "20 pounds[,]" "[f]requently [] lift and/or carry" "10 pounds[,]" and was limited to "occasionally" "climbing ramps/stairs," "ladders/ropes/scaffolds," "stooping," "kneeling," "crouching," and "crawling." AR 93. Treating physician, David Young M.D., who was given "little weight," found plaintiff's impairments to be more severe. AR 32.

////

////

B. <u>Dr. Young, Treating Cardiologist</u>

Plaintiff was referred to treating cardiologist Dr. Young in 2014 by Dr. Aldrich for her postural orthostatic tachycardia syndrome ("POTS"). AR 572. On August 14, 2014 plaintiff reported that "with standing she felt lightheaded, weak, developed tunnel vision, and had feelings of near syncope." AR 572. Dr. Young noted that plaintiff "had undergone extensive and thorough cardiovascular work to this point," "had a tilt table test where apparently she met diagnostic criteria for pots syndrome at Carson Tahoe Hospital," and was "referred to a clinic in Utah where the diagnosis of pots syndrome was further confirmed." <u>Id.</u> Dr. Young diagnosed plaintiff with POTS and noted that plaintiff was on "mineralcorticoid therapy with no further room to increase" due to plaintiff's inability to tolerate higher doses and that plaintiff had "already increase[ed] her sodium intake as well as fluid consumption" but that she still had "ongoing symptoms that [did] not appear to be completely addressed." AR 572-576.

On August 21, 2014 plaintiff presented for a follow-up appointment. AR 569. Dr. Young noted that he was a "little questionable" about plaintiff's diagnosis for POTS given that plaintiff had an "orthostatic drop in her blood pressure rather than a tachycardic reponse/orthostatic intolerance." AR 569. However, Dr. Young opined that plaintiff's medical therapy would not vary. Plaintiff had been on Florinef in the past and had continued "aggressive by mouth fluid intake." AR 569. Dr. Young further noted that he would be ordering a wheelchair per plaintiff's request given that she had "periods of lightheadedness with long ambulation." AR 571. Treatment notes for November 11, 2014 and September 15, 2015 further indicate that besides addressing plaintiff's POTS diagnosis, plaintiff presented with problems with headaches, painful menstruation, and her blood pressure dropping when sitting and standing. AR 642-643, 644-645.

Dr. Young completed a Medical Summary on June 10, 2015 addressing plaintiff's symptoms and limitations. AR 591-591. Dr. Young indicated that plaintiff's symptoms included "palpitations," fatigue," "effort intolerance," "lightheadedness," and that she was currently on medication that gave plaintiff side effects such as an "electrolyte imbalance," "slower [heartrate]" and "low blood pressure." AR 591. Dr. Young opined that plaintiff was required to rest or lie down during the day due to her inability "to stand for prolonged periods due to tachycardia." <u>Id.</u>

8

It was further opined that plaintiff's "activities of daily living," and "social functioning" were "significantly impaired" and her "ability to concentrate and focus" was "moderately impaired." AR 592. Lastly, Dr. Young opined that plaintiff would be "unable to complete a full day of work" and that she had been "compliant with all treatment and instructions." Id.

On June 30, 2015, Dr. Young provided a letter to Cal-Fresh opining that plaintiff was "unable to work due to her debilitating pots syndrome" and that she was an appropriate candidate to receive food stamps. AR 640. On July 29, 2015, Dr. Young completed a "verification of employability" where Dr. Young opined that plaintiff was unable to work from "1/29/15 to 1/29/16" period. AR 652.

In his "Medical Assessment by Treating Physician" dated February 15, 2016, Dr. Young found, in relevant part, that plaintiff was limited in an eight-hour period to sitting for four hours and standing or walking for one hour. AR 745-746. Dr. Young noted that these limitations were due to "orthostatic hypertension." AR 746. Dr. Young further opined that "plaintiff had been compliant with treatment plans and medications[,]" but that she continued "to have symptomatic orthostatic hypertension and palpitations due to tachycardia." AR 747.

C. The ALJ's Reasons for Giving Dr. Young's Opinions "Little Weight"

The ALJ explained she gave Dr. Young's opinions "little weight" for the following reasons:

> Although there is a treatment relationship between Dr. Young and the claimant, the limitations and findings are overall inconsistent with the treatment records, imaging and diagnostic studies, objective findings, and evidence of the claimant's activities in the record. The evidence shows the claimant's treatment remained conservative and routine, and essentially unchanged throughout this time. She was regularly advised to exercise, without limitations, to assist with managing her POTS symptoms. She reported having the ability to engage in many activities including jogging and tennis, as discussed above, and remained independent in her care. She was able to attend her appointments without any noted difficulties. It does not appear she has required further evaluation or care to manage these symptoms and that with treatment, and compliance, her symptoms are effectively managed. These opinions appear to rely on the claimant's subjective complaints.
>
> Furthermore, the issue concerning the claimant's ability to work is not a medical issue regarding the nature and severity of an individual's impairment(s) but is an administrative finding that is

> dispositive of the case, that would direct a determination of a decision of disability. Under CFR 416.927(e), the final responsibility for deciding this issue is reserved to the Commissioner.

AR 32.

First, the ALJ rejected Dr. Young's opinions on the basis that they are inconsistent with the medical record. However, the ALJ failed to identify specific evidence that conflicted or was inconsistent with the limitations and findings by Dr. Young. In rejecting a medical opinion as unsupported or inconsistent with the treatment notes, the "ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d418, 421 (9th Cir. 1988). For example, the ALJ does not identify objective evidence that contradicts Dr. Young's opinion that plaintiff is able to stand and/or walk for no longer than an hour nor sit for longer than four hours in an eight-hour period. On the contrary, the medical record, including Dr. Young's reports, indicates that plaintiff would get "tachycardic" lightheadedness," "dizziness," "shakiness," or "her blood pressure would drop" when going from lying or seated to a standing position or when standing or sitting for too long. AR 46-47 (plaintiff testified that she would black out or get tunnel vision" when standing for too long), 428, 431, 434, 437, 440, 453, 460, 463, 582, 585, 588, 642, 644, 763. An ALJ may reject a treating physician's opinion only by providing clear and convincing or specific and legitimate reasons supported by substantial evidence by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (internal citations and quotation marks omitted). Here, the ALJ has failed to identify specific evidence in the medical record that conflicts with Dr. Young's limitations.

Second, the ALJ's description of plaintiff's treatment remaining "conservative, "routine," and "unchanged throughout this time" mischaracterizes the record. Dr. Young had indicated that plaintiff's treatment included "maximal sodium liberalization" and that plaintiff had "maintain[ed] aggressive by mouth fluid intake" to address her diagnosis. AR 569. Moreover, plaintiff had developed "significant abdominal distress" which required one of her medications to be discontinued. AR 569. The records further show that plaintiff's medication had remained

stable while at other times was changed to address her symptoms. AR 575-576. This is consistent with the treatment records that show that plaintiff continued to require her treatment to be adjusted to address symptoms related to her impairment.

Relatedly, the ALJ further rejects Dr. Young's opinions based on an "appear[ance]" that plaintiff does not require "further evaluation or care to manage these symptoms and that with treatment, and compliance, her symptoms are effectively managed." AR 32. However, as noted plaintiff required adjustment in medication to address her symptoms and reactions to treatment. The record also indicated that plaintiff continued to complain about her blood pressure dropping when she would sit or stand. AR 642, 644. This is consistent with Dr. Young's statement that although plaintiff had "been compliant with all treatment plans and medications," plaintiff continued to have "symptomatic orthostatic hypotension and palpitations due to tachycardia." AR 747. For these reasons, the ALJ has failed to provide a specific and legitimate reason for rejecting Dr. Young's opinion.

The ALJ also discounted Dr. Young's opinion, in part, based on the plaintiff's activities of daily living. An ALJ may discount a treating physician's opinion if it clearly inconsistent with a claimant's daily activities, however, "this principal has no application" where "a holistic review of the record does not reveal an inconsistency between the [treating physician] and the [claimant's] daily activities." Ghanim, 763 F.3d at 1162. Review of the record shows that although plaintiff was advised to exercise to help with her symptoms, it was recommended she start with "a recumbent bike or doing exercises while lying down." AR 430, 552, 554, 563, 763. The record includes one page where it is noted that plaintiff was well enough to play tennis (AR 431), but this atypical item cannot outweigh a holistic review of the record. See Ghanim, 763 F.3d at 1162 n.6 ("the ALJ's example of one note, out of over one hundred pages of treatment notes, where [the physician] states that he was surprised by [claimant's] request for a caretaker because [claimant] did not appear to be impaired psychiatrically, is not substantial evidence of a conflict between the treatment notes and the treating providers' opinions regarding the severity of [claimant's] impairment.") Furthermore, plaintiff testified that although she attempted to exercise on multiple occasions, her legs would buckle or she would blackout because she was unable to

11

maintain consciousness long enough to exercise. AR 46. Plaintiff attempted treadmill use on multiple occasions after she was diagnosed with POTS, but would blackout after five minutes and be unable to continue. Id. Additionally, plaintiff testified that she was reliant on her mother for meals, at times for feeding, and assistance getting to the bathroom or to the shower, all based on her inability to hold herself up for long periods. AR 54-55. Accordingly, substantial evidence in the record does not support the ALJ's finding of a conflict between Dr. Young's opinion and plaintiff's daily activities.

The ALJ next concludes that plaintiff's ability "to attend her appointments without any noted difficulties" is inconsistent with Dr. Young's opinion. However, the court fails to see the inconsistency here. Dr. Young had noted during an appointment that plaintiff had a "orthostatic drop in her blood pressure." AR 572. Moreover, plaintiff's complaints in her appointments were related to low blood pressure when sitting or standing, which is consistent with her impairment. AR 642-646.

The ALJ further rejects Dr. Young's opinion based on his reliance on plaintiff's subjective complaints. It is clear from the record that Dr. Young relied on objective evidence such as echocardiograms, vital signs, and lab tests to confirm plaintiff's diagnosis, limitations, and the proper treatment to address her symptoms. See AR 578, 601, 602, 617, 618, 642, 734, 735, 741. "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." Ghanim, 763 F.3d at 1162. The ALJ has failed to provide specific and legitimate reasons for rejecting the opinion of Dr. Young.

Lastly, "[a]lthough the ALJ is not bound by an expert medical opinion on the ultimate question of disability, she must provide 'specific and legitimate' reasons for rejecting the opinion of a treating physician." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing Lester, 81 F.3d at 830–31). While the ALJ was correct to disregard Dr. Young's opinion on the ultimate question of disability, the fact that he tendered such an opinion is not a permissible reason to reject his opinion as to plaintiff's sitting, standing and/or walking limitations in an eight-hour period.

Accordingly, the court finds the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Young's opinion.

C. Harmless Error Analysis

As discussed, the ALJ erred in rejecting Dr. Young's opinion and that error was not harmless. Accordingly, the court is authorized "to 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2000).

More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Benecke, 379 F.3d at 593 (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000)).

Under the second step in the remand analysis, the court must "review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2016) (quoting Treichler, 775 F.3d at 1101). Under the third step in this analysis, the court should remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted).

In this case, if Dr. Young's opinion were credited as true, plaintiff would necessarily be found disabled under the applicable regulations. Specifically, Dr. Young opined that plaintiff would be limited to sitting for four hours in an eight-hour period and be able to stand and/or walk for one hour. AR 745-746. When plaintiff's limitations, particularly the limitation of plaintiff's

ability to sit/stand/walk in an eight-hour day, was put to the VE at the hearing, the VE testified that there would be no jobs available. AR 58. Because the VE found that no jobs were available for plaintiff under the hypothetical incorporating Dr. Young's opinion, plaintiff is disabled under the Act.

Where the above steps are satisfied, this court must exercise its discretion in determining whether to remand for further proceedings, or for the immediate calculation and award of benefits. Dominguez, 808 F.3d at 407 (if disability finding would necessarily follow if discredited evidence were credited as true, "the district court may exercise its discretion to remand the case for an award of benefits"). If, despite satisfying the above steps, the "record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act," the court should remand for further proceedings. Burrell, 775 F.3d at 1141 (quoting Garrison, 759 F.3d at 1021). However, the court would be "abus[ing] its discretion by remanding for further proceedings where the credit-as-true rule is satisfied and the record afforded no reason to believe that [the plaintiff] is not, in fact, disabled." Garrison, 759 F.3d at 1021.

Here, the record leaves no doubt that the plaintiff is disabled within the meaning of the Act. The VE was provided a hypothetical by plaintiff's attorney that included the limitation of plaintiff's ability to sit for only four hours and stand for an hour in an eight-hour period. AR 58. Based on this hypothetical, the VE concluded that plaintiff was prevented from maintaining full-time employment. Accordingly, the court finds that plaintiff is disabled within the meaning of the Act and no further fact finding is necessary.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 10), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 15), is DENIED;

3. The matter is REVERSED and REMANDED to the Commissioner for an immediate award of benefits; and

////

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: September 28, 2018

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE